**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | **CASE NO. 4:07 CV 1352** |
| | ) | |
| **PLAINTIFF,** | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **RICHARD G. GAUMER, et al.,** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| **DEFENDANTS.** | ) | |

This matter is before the Court on Defendants' Motion to Dismiss. (Dkt. # 6). For the following reasons, the Defendants' motion is **DENIED**.

**I.     BACKGROUND**

The United States of America ("Government") filed the instant action against Richard Gaumer ("Gaumer") and Constance Watt ("Watt"), as Trustee of the Land Trust No. 62238 ("Land Trust") and asked that the Court reduce to judgment several tax liens against Gaumer and foreclose those tax liens against the property at 3967 Painseville-Warren Road, Southington, Ohio 44470 ("Painseville-Warren Property"). (Dkt. # 1). The Complaint alleges that the Secretary of the Treasury of the United States made nine (9) assessments against Gaumer for unpaid federal taxes for the years 1983 through 1991. (Dkt. # 1 ¶ 4). The taxes have yet to be paid, and the Government

alleges that Gaumer owes the Government $3,194,235.76. (Dkt. # 1 ¶ 6). The Government further alleges that, as of the date of the unpaid assessments, the Government has liens on Gaumer's property, pursuant to 26 U.S.C. §§ 6321 and 6322. (Dkt. # 1 ¶ 7).

The Government alleges that Watt, as trustee of the Land Trust, acquired title to the Painseville-Warren Property in June 1998. (Dkt. # 1 ¶ 8). The Government further alleges that the Land Trust is Gaumer's nominee and alter ego. (Dkt. # 1 ¶¶ 9, 10). The Government claims that the Painesville-Warren Property is subject to the tax liens that resulted from Gaumer's unpaid tax assessments. (Dkt. # 1 ¶¶ A, C).

Defendants filed a motion to dismiss, claiming that the Government can prove no set of facts that Gaumer has any interest in the Painseville-Warren Property. (Dkt. # 6). Defendants allege that after a series of transactions following Gaumer's divorce from Watt's mother, Watt became the trustee of a land trust located in Mayfield Village, Ohio. (Dkt. # 6, p. 3). Watt also held equitable title in that trust. (Dkt. # 6, p. 3). Gaumer applied for and became agent and caretaker of the Mayfield Village property. (Dkt. # 6, p. 4). Defendants allege that the looming threat of Y2K caused the trust beneficiaries to sell the Mayfield Village property and purchase the Painseville-Warren Property. (Dkt. # 6, p. 4). The trust beneficiaries appointed Gaumer administrator and caretaker of the Painseville-Warren Property. (Dkt. # 6, p. 4). Defendants allege that Gaumer has no legal or equitable interest in the Painseville-Warren Property. (Dkt. # 6, p. 4).

Citing only Ohio law,[1] Defendants argue that the Complaint is insufficient because it provides not set of facts that, if proven, could provide the relief sought. (Dkt. # 6, p. 5). Citing

---

[1] The Court will construe Defendants' Motion to Dismiss as a motion made pursuant to FED. R. CIV. P. 12 (b)(6), rather than the Ohio equivalent.

"Free Online Dictionary" for the definition of "nominee," Defendants argue that the Government has not alleged the facts necessary to prove that Watt is Gaumer's nominee. (Dkt. # 6, p. 5-6). Furthermore, the Government did not allege that the funds used to purchase the Painseville-Warren Property originated with Gaumer. (Dkt. # 6, p. 6). Defendants also argue that the Land Trust is not the alter ego of Gaumer because the Government fails to allege facts sufficient to meet either an Internal Revenue Service Manual definition of "alter ego," or an Ohio law definition of "alter ego" for corporations. (Dkt. # 6, p. 7). Defendants also argue that there is no unity of ownership between Gaumer and the Land Trust, and inequity would result if the Land Trust were considered the "alter ego" of Gaumer. (Dkt. # 6, p. 8).

The Government filed a brief in opposition to the motion to dismiss. (Dkt. # 7). At the outset, the Government claims that the fact that Gaumer and Watt jointly filed the motion to dismiss supports its nominee and alter ego contentions. The Government goes on to argue that the Federal Rules of Civil Procedure require notice pleading, and the complaint alleges the Government's claims with the specificity notice pleading requires. (Dkt. # 7, p. 3). The Government also argues that the Complaint sufficiently states a claim to foreclose liens on the Painesville-Warren Property and adequately states facts that, if proven, would support such a claim. (Dkt. # 7, p. 4-5). The Government also asserts that the motion to dismiss should not be converted to a motion for summary judgment and asks the Court to disregard the extraneous materials submitted by Defendants in support of their motion to dismiss.[2] (Dkt. # 7, p. 5-6).

---

[2] The Court will disregard those extraneous materials, as it is the policy of the Court not to allow a party to gain any advantage by filing a motion to dismiss with extraneous materials with the intent to have the Court convert it to a motion for summary judgment.

## II. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether the plaintiff has pleaded a cognizable claim. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). Essentially, it allows the court to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. See, e.g., Neitzke v. Williams, 490 U.S. 319, 326–27 (1989).

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see Neitzke, 490 U.S. at 326-27; Lewis v. ACB Bus. Serv., Inc., 135 F.3d 389, 405 (6th Cir. 1997); Ang v. Proctor & Gamble Co., 932 F.2d 540, 544 (6th Cir. 1991). Therefore, the standard applied in evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976).

To determine whether a motion to dismiss should be granted, the court must first examine the complaint. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a), and provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47; Westlake, 537 F.2d at 858. The plaintiff, however, has an obligation to allege the essential material facts of the case. Scheid, 859 F.2d at 436–37.

Courts must construe the facts alleged "in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff

4

undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." Ziegler v. IBP Hog Mkt., Inc., 249 F.3d 509, 512 (6th Cir. 2001); see Ang, 932 F.2d at 544. While the court must accept the plaintiff's *factual* allegations as true, "[t]he trial court need not accept as true [a plaintiff's] legal conclusions."  See Lewis, 135 F.3d at 405.

### III.   LAW AND ANALYSIS

The Government claims it is entitled to a judgment that it has several tax liens against Gaumer and that it can satisfy those liens through foreclosure of the Painesville-Warren Property.

The Complaint asserts that Gaumer failed to pay 9 tax assessments that total more than $ 3 million.  (Dkt. # 1 ¶¶ 4, 6).  Therefore, Defendants are on notice that the Government seeks to reduce the outstanding tax assessments to a judgment.

The Government also seeks to foreclose its liens against the Painesville-Warren Property.  The Land Trust and Watt are named in the Complaint, according to the Government, because they may claim an interest in the Painesville-Warren Property.  The Government alleges that the Land Trust is both the nominee and alter ego of Gaumer, and as such, it can foreclose on the Painesville-Warren Property to satisfy its liens against him.

The Government does not allege that Gaumer is the title-holder of the Painesville-Warren Property.  Rather, the Government alleges that the Painesville-Warren Property belongs to the Land Trust, of which Watt is the Trustee.  The Government can seize the property of a third party to satisfy a taxpayer's liabilities if the third party is the nominee or alter ego of the taxpayer.  See G.M. Leasing v. United States, 429 U.S. 338, 351 (1977) ("If

[petitioner-corporation] was [taxpayer's] alter ego, it had no countervailing effect for purposes of his federal income tax. . . . It would follow then that the [Internal Revenue] Service could properly regard petitioner[-corporation's] assets as [taxpayer's] property[,] . . . and the [Internal Revenue] Service would be empowered, under [26 U.S.C.] § 6331, to levy upon assets held in petitioner[-corporation's] name in satisfaction of [taxpayer's] income tax liability." (citations omitted)).

The Government maintains that it can recover Gaumer's unpaid liabilities against the Painesville-Warren Property because Watt and the Land Trust are either Gaumer's nominee or alter ego. The Court must first look to state law to determine a taxpayer's interest in a third party's property. See Spotts v. United States, 429 F.3d 248, 251 (6th Cir. 2005) (citations omitted). If, under state law, a taxpayer has an interest in that property, the Government can satisfy federal tax liens against such property. See id. (citations omitted). Although Ohio law does not explicitly recognize "nominee theory" of ownership, it does recognize "equitable ownership," which is akin to "nominee theory." See Nantucket Village Dev. Co. v. United States, 2001 U.S. Dist. Lexis 1064 (N.D. Ohio 2001) (citing Flint v. Holbrook, 608 N.E.2d 809, 814 (Ohio App. 2d Dist. 1992)). An equitable owner "'is recognized in equity as the owner of the property, because the real and beneficial use belong to him, although the bare legal title is invested in another.'" Flint, 608 N.E.2d at 814 (quoting Black's Law Dictionary (6 Ed. 1990) 1105). To proceed under an alter ego theory, the Government must show that Gaumer exercised "domination and control over the [land trust] . . . so complete that the [land trust] has no separate mind, will, or existence of its own."

6

Belvedere Condominium Unit Owners' Assoc. v. R.E. Roark Cos., 67 Ohio St. 3d 274, 288 (Ohio 1993).

As noted above, the Complaint alleges that the Land Trust holds the title to the Painesville-Warren Property, and Watt is the trustee. (Dkt. # 1 ¶ 8). The Complaint also alleges that Land Trust, of which Watt is the trustee, is Gaumer's nominee or alter ego. (Dkt. # 1 ¶¶ 9, 10). The Government has pleaded facts with enough specificity to put Defendants on notice of the claims against them. Therefore, the Motion to Dismiss must be denied.

## IV. CONCLUSION

The Defendants' Motion to Dismiss is **DENIED.** The parties shall appear before the Court on January 3, 2008 at 1:30 p.m. for a Case Management Conference.

**IT IS ORDERED.**

**/s/ Peter C. Economus - December 10, 2007**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**